

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00261-CV

**IN THE MATTER OF A.C.**

From the 436th District Court, Bexar County, Texas
Trial Court No. 2018JUV01026
Honorable Lisa Jarrett, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: March 25, 2020

AFFIRMED

The sole issue presented on appeal is whether the evidence is legally insufficient to support the jury's finding that A.C. was the person who murdered F.R. We affirm the trial court's judgment.

### BACKGROUND

A.C. was arrested approximately one hour after F.R. was shot at a park while he was playing basketball. Two eyewitnesses who were playing basketball with F.R. identified A.C. as the shooter. One of those eyewitnesses was A.C.'s younger brother. A jury found A.C. engaged in delinquent conduct by committing the offense of murder, and the trial court assessed a determinate sentence of thirty years.

**STANDARD OF REVIEW**

To evaluate the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt." *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018).

The legal sufficiency standard of review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. In applying the standard, "[t]he jury is the sole judge of the credibility of the witnesses." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). As such, the jury "may choose to believe some testimony and disbelieve other testimony." *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

**ANALYSIS**

As previously noted, two eyewitnesses at the scene of the shooting, including A.C.'s younger brother, identified A.C. as the shooter.[1] R.L., one of the eyewitnesses, ran from the scene; however, he later returned to the scene at his mother's insistence and showed an officer images of A.C. from an Instagram posting. R.L. testified he recognized A.C. from the blue jacket he was wearing at the time of the shooting because he previously saw A.C. wearing the same jacket. He also saw A.C. wearing the same jacket and holding a gun in an Instagram video, and an image

---

[1] In his brief, A.C. relies on the factors set forth in *Balderas v. State*, 517 S.W.3d 756, 792 (Tex. Crim. App. 2016), to contend the eyewitnesses' identification of A.C. as the shooter was unreliable. The *Balderas* factors, however, are used by a trial court in assessing the reliability of a witness's identification of a suspect after the trial court determines a pretrial identification procedure was impermissibly suggestive. *See id*. Accordingly, those factors are not applicable in the context of a legal sufficiency review where we defer to the jury's evaluation of the credibility of the witnesses. *See Queeman*, 520 S.W.3d at 622.

from the video was admitted into evidence. R.L. also recognized A.C. from "the way he ran and how short he was and how skinny he was." One of the officers present with R.L. testified R.L. nodded his head in agreement when A.C.'s name was broadcast over the radio as the name of the suspect.

L.M., A.C.'s younger brother, admitted he told an officer he thought A.C. was the shooter. L.M. also recalled telling the officer he thought the shooter was A.C. because of the clothes the shooter was wearing. L.M. further recalled telling the officer A.C. had a jacket similar to the one the shooter was wearing.

Ranger Keith Pauska, the officer who interviewed L.M., testified L.M. stated the shooter was wearing a blue hoodie with white lettering. L.M. also stated he thought the shooter was his brother. When Ranger Pauska asked L.M. how certain he was on a scale of 0 to 100, L.M. responded that he was sixty to seventy percent certain. An audio recording of the interview was admitted into evidence and played for the jury.

In addition to the testimony of R.L. and L.M. identifying A.C. as the shooter, other witnesses testified regarding the clothing the shooter was wearing, including a blue hoodie with white lettering. Instagram posts showing A.C. wearing a blue hoodie with white lettering were admitted into evidence, and some of the clothing recovered from A.C.'s bedroom, where the evidence established he changed after the shooting, matched the clothing described by the witnesses. The evidence also included Instagram posts by A.C. asking about obtaining a gun approximately twelve days before the shooting and Instagram posts and videos from A.C.'s phone showing A.C. displaying and discharging a firearm and wearing a hoodie matching the description of the hoodie worn by the shooter. Witnesses also testified about Instagram messages between A.C. and F.R. prior to the shooting in which they arranged to meet at the park to fight. Photographs of the screen of F.R.'s phone were admitted into evidence which contained some of the messages

that were exchanged. Finally, at the time of his arrest, A.C.'s hands were tested for gunshot residue, and the tests revealed gunshot residue on A.C.'s hands from which the jury could find he recently shot a gun.

## CONCLUSION

Because we hold the evidence is legally sufficient to support the jury's finding that A.C. was the person who murdered F.R., we affirm the trial court's judgment.

Liza A. Rodriguez, Justice